*E-Filed 7/9/10*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ROBERT P. KASER,

    Petitioner,

    v.

ROBERT K. WONG, Warden,

    Respondent.

No. C 09-2029 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 1989, petitioner pleaded guilty to second degree murder and assault with a deadly weapon. The El Dorado County Superior Court sentenced petitioner to fifteen years to life, plus a six-year enhancement. In 2007, the Board of Parole Hearings ("Board") found petitioner unsuitable for parole on grounds that he "would pose an unreasonable risk of danger to society and or a threat to public safety if released from prison." (Ans., Ex. 1 at 156.) In response to the Board's decision, petitioner sought, though was denied, relief on state collateral review. (Pet. at 4–5.) This federal habeas petition followed.

In reaching its decision, the Board considered the facts of the commitment offense. In 1985, petitioner shot and killed his stepson, Ehren Dixon, and inflicted gunshot wounds on another stepson, Myles Dixon, and his estranged wife, Priscilla. The details of the crime are that in August 1985, petitioner went to the house in Placerville, California he once shared with Priscilla in order to retrieve property. Priscilla told Ehren and Myles to put on their shoes and help petitioner. As the boys began to do so, petitioner appeared at the door of their room and fired a .45 caliber handgun at them. Myles was shot first and reported that he observed petitioner then shoot Ehren. Petitioner proceeded to walk to the kitchen where he shot once at Priscilla, wounding her in the arm. Priscilla claimed that he tried to shoot her again, but that the weapon malfunctioned, allowing her to flee the house, following her sons, who had run to a neighbor's house for help. Upon arriving, the police saw Ehren and Myles lying on the porch facing the opposite direction from each other, while Priscilla was attending to them, petitioner having fled the scene. Thirty minutes after the victims were moved by ambulance, investigating officers observed petitioner drive up to the house. Officers arrested petitioner, who had a blood alcohol content of .31 percent. Fourteen year old Ehren succumbed to his gunshot wound a few days later. (Ans., Ex. 1 at 16–17.)

In addition to the circumstances of the commitment offense, the Board cited as factors in its decision petitioner's social history, and his psychological report. Petitioner's social history includes a record of violence and the heavy use of alcohol. In fact, petitioner's "significant" alcoholism, and his repeated failures in stopping drinking, figured largely in the Board's discussion of his social history, not least because he was very intoxicated on the day of the murder. (*Id*. at 158–59.) Petitioner admitted at the hearing that he drank heavily and often over twenty years, consuming at times at least a quart of vodka a day, including the hours just before the murder. (*Id*. at 20.) His initial attempts at treatment were failures, petitioner admitted. (*Id*. at 24–25.) These admissions were corroborated by surviving victims Myles Dixon and Priscilla who spoke at the parole hearing. Myles asserted that petitioner repeatedly failed in his attempts to stop drinking, recalling that "[w]hile accepting

his one-year sobriety chip he was drunk." (*Id*. at 147.) According to Myles, petitioner was emotionally and physically abusive, often striking Myles and threatening to strike Priscilla, who also stated at the hearing that petitioner was a violent and abusive alcoholic. (*Id*. at 147–48, 151–55.) Myles's description of his childhood household is at odds with that given by petitioner, who stated that there was never any violence in the household, and never any serious verbal abuse. (*Id*. at 27, 35.) The Board also noted that petitioner's latest psychological report rated petitioner's risk for future violence as low provided that he kept away from alcohol, *id*. at 87, 89, and that his last serious disciplinary infraction occurred in 1987, *id*. at 63–64. If petitioner were to drink again, his "risk of violence would be high," according to one psychological report. (*Id*. at 82.) In light of all these factors, the Board concluded that petitioner posed an unreasonable threat to public safety and denied him parole. (*Id*. at 32.)

As grounds for federal habeas relief, petitioner alleges that the Board's decision denying parole (1) violated his right to due process because the decision was not supported by "some evidence" and is based on the unchangeable facts of the commitment offense; (2) failed "to state sep[a]rate reason [in imposing a multi-year denial] as required by law in violation of the state and case law"; and (3) the state court "abused its discretion in denying the writ in that the court found true the conclusion reached by the Board which was in direct contraction [sic] with the evidence" and in so doing "deprived Petitioner of a fair and impartial determination of the facts."

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

1 as determined by the Supreme Court of the United States; or (2) resulted in a decision that
2 was based on an unreasonable determination of the facts in light of the evidence presented in
3 the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**DISCUSSION**

Petitioner claims that the Board's decision violated his right to due process because it was not based on "some evidence" that he currently poses an unreasonable risk to public safety. Due process requires that the Board's decision to deny a California prisoner parole be supported by "some evidence" of current dangerousness. *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *see also Pearson v. Muntz*, No. 08-55728, 2010 WL -- (9th Cir. May 24, 2010) (per curium). Accordingly, in reviewing federal habeas claims that a California prisoner was denied parole in violation of due process, courts must "decide whether the California judicial decision approving the governor's [or the parole board's] decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the

evidence." *Hayward*, 604 F.3d at 562–63.

The commitment offense alone does not always provide evidence that a petitioner poses a current threat to public safety. *Id*. at 562. The offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports an inference of dangerousness. *Id*., citing *In re Lawrence*, 44 Cal. 4th 1181, 1214 (Cal. 2008).

Here, the record shows that there was "some evidence" to support the state court's approval of the Board's parole denial. First, the circumstances surrounding the commitment offense suggest that petitioner lacks sufficient self-control, which can result in violence and abuse. Second, the record establishes that petitioner's pre- and post-conviction history supports an inference of current dangerousness — in particular his turbulent marriage to Priscilla, his physical and emotional abuse of his stepsons, his admitted extensive history of alcohol abuse, and rating of having a low risk for violence. While a rating of "low" is not conclusively prohibitive, it does constitute some evidence of current dangerousness in addition to the commitment offense. *See Hayward*, 603 F.3d at 570–71 (Berzon, J., concurring). This "low" risk would become "high" if petitioner were to drink again, a reasonable possibility considering his previous failures at staying alcohol-free.

Turning to the instant matter, it is reasonable to infer from this record of past violence and misbehavior that, if released, petitioner currently poses an unreasonable risk of danger to society, or a threat to public safety. Because the Board's decision is supported by sufficient evidence in the record, including circumstances other than those of the commitment offense, petitioner's claim that the Board's decision was unsupported by "some evidence," or was based solely on the circumstances of the commitment offense, or otherwise violated his right to due process, is without merit. Accordingly, petitioner's claims that the Board's decision was not supported by some evidence, that the Board relied solely on the unchanging circumstances of the commitment offense, and that the state court's denial of the writ was unconstitutional are DENIED.

Petitioner's claim that the four-year denial of a parole hearing violates state law is DENIED. Petitioner has not shown that this is a cognizable federal habeas claim, or that the state court's denial of this claim was contrary to clearly established federal law. Rather, petitioner asserts only that it is unreasonable for the Board to use the same reasons to deny parole and to delay petitioner's next parole hearing for four years. Petitioner points to no supporting authority for his assertion.

In sum, the state court's approval of the Board's decision, therefore, was not an "unreasonable application" of the California "some evidence" requirement, nor was it "based on an unreasonable determination of the facts in light of the evidence."

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: July 9, 2010

RICHARD SEEBORG
United States District Judge